UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) 1:15-cr-00072-JDL |
| | ) |
| ROGER BELANGER, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

On August 19, 2016, Roger Belanger was convicted after a jury trial of one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and an unspecified amount of oxycodone in violation of 21 U.S.C.A. §§ 841(a)(1), 841(b)(1)(A), 846 (West 2020), as well as one count of using or maintaining a drug-involved premises in violation of 21 U.S.C.A. § 856(a)(1), (b), and 18 U.S.C.A. § 2 (West 2020). On April 28, 2017, I sentenced Belanger to a term of imprisonment of 132 months on each count, to be served concurrently and followed by a term of supervised release of five years. Belanger appealed his conviction and his sentence, both of which were affirmed by the First Circuit on May 9, 2018. *See United States v. Belanger*, 890 F.3d 13, 17 (1st Cir. 2018). Belanger now moves for compassionate release under 18 U.S.C.A. § 3582(c)(1)(A)(i) (West 2020), based on the alleged health risks that he faces in federal custody due to the COVID-19 pandemic (ECF No. 650). The Government opposes Belanger's release (ECF No. 651). For the reasons that follow, I grant his motion.

## I.  LEGAL STANDARD

The compassionate release statute, as amended by the First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239-41 (codified at 18 U.S.C.A. § 3582(c)-(d) (West 2020)), permits a court to consider a motion for compassionate release brought by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C.A. § 3582(c)(1)(A).  Once a court determines that it may consider a defendant's motion, the court may reduce the defendant's sentence if, after considering the factors set forth in 18 U.S.C.A. § 3553(a) (West 2020), it finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A).

Because the policy statement issued by the Sentencing Commission under the compassionate release statute, U.S. Sentencing Guidelines Manual § 1B1.13(2) (U.S. Sentencing Comm'n 2013), has not been updated since the enactment of the First Step Act, I have previously determined that although I should consider the policy statement, I need not strictly apply it when deciding whether to grant compassionate release.[1]  *See United States v. Calhoun*, No. 2:15-cr-00056-JDL-1, 2020 U.S. Dist.

---

[1]  The policy statement provides that compassionate release should only be granted upon a finding that the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S. Sentencing Guidelines Manual § 1B1.13(2). Additionally, an application note to the policy statement delineates four categories of "extraordinary and compelling reasons"

LEXIS 117527, at *3 (D. Me. July 1, 2020) (citing *United States v. Acoff*, Nos. 3:15cr157 (MPS), 3:11cr179 (MPS), 3:09cr073 (MPS), 2020 WL 2781798, at *2 (D. Conn. May 29, 2020) and *United States v. Brooks*, No. 07-cr-20047-JES-DGB, 2020 WL 2509107, at *5 (C.D. Ill. May 15, 2020) (collecting authorities)).

## II. ANALYSIS

Belanger argues that compassionate release is warranted because the conditions at the Devens Federal Medical Center ("FMC Devens") and his medical history place him at a high risk of severe illness or death from COVID-19. Before evaluating the merits of Belanger's motion for compassionate release, I address the threshold question of whether Belanger has exhausted his administrative remedies, which is a prerequisite to judicial action. *See Calhoun*, 2020 U.S. Dist. LEXIS 117527, at *4.

### A. Administrative Remedies

As noted above, a court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C.A. § 3582(c)(1)(A). Courts have referred to this provision as a "hybrid requirement" that defendants "either exhaust or wait thirty days." *See, e.g.*, *United States v. Haney*, No. 19-cr-541 (JSR),

---

warranting compassionate release. *Id.* cmt. n.1. The first three categories concern the defendant's medical condition, age, and family circumstances respectively. *See id.* The fourth is a catchall category encompassing reasons "other than, or in combination with" those outlined in the first three categories, "[a]s determined by the Director of the Bureau of Prisons." *Id.*

2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020). I have previously determined that the hybrid requirement is a non-jurisdictional claim-processing rule. *See Calhoun*, 2020 U.S. Dist. LEXIS 117527, at *5 (citing *United States v. Ramirez*, Criminal Action No. 17-10328-WGY, 2020 WL 2404858, at *7 (D. Mass. May 12, 2020)). Although courts generally must enforce the hybrid requirement if the Government properly raises an objection based on a defendant's failure to comply with it, such objections can be waived or forfeited.[2] *Id.* at *5-6 (citing *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) and *United States v. Reyes-Santiago*, 804 F.3d 453, 458, 478 (1st Cir. 2015)).

Belanger filed a compassionate release request with the warden at FMC Devens on June 9, 2020. The warden denied his request on June 10. There is no evidence in the record suggesting that Belanger has exhausted all administrative rights to appeal the warden's decision, and he did not wait thirty days before filing a motion for compassionate release on his own behalf on June 30. However, Belanger filed an amended petition on July 14, after the Court appointed counsel to represent him. Thirty days had elapsed between the date Belanger filed his request to the warden and the date he filed his amended motion to the Court. Based on these facts, the Government waived any objection it may have had that Belanger has not satisfied

---

[2] I do not address whether any equitable exceptions may excuse a defendant's failure to comply with the claim-processing rule at issue. *See Fort Bend Cty.*, 139 S. Ct. at 1849 n.5; *Ramirez*, 2020 WL 2404858, at *7 (describing the split of authorities on this issue).

§ 3582(c)(1)(A)'s hybrid requirement.[3] *See* ECF No. 651 at 14. Pursuant to the Government's waiver, I proceed to the merits of Belanger's motion.

**B. The Merits**

    **1. Extraordinary and Compelling Reasons**

As explained above, a court may only grant compassionate release if it finds that "extraordinary and compelling reasons" warrant a reduction in the defendant's sentence. 18 U.S.C.A. § 3582(c)(1)(A)(i). Belanger asserts that extraordinary and compelling reasons exist in part because he is likely to contract COVID-19 at FMC Devens. Belanger is assigned to a dormitory at FMC Devens that is shared by approximately 110 prisoners. Since the pandemic began, two inmates at FMC Devens have died from the disease, and forty-seven inmates and six staff members have been sick but recovered. *COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ ("COVID-19 Cases" section, "Full breakdown and additional details" hyperlink) (last visited Sept. 2, 2020). Currently, FMC Devens is reporting that one inmate and two staff members are testing positive. *Id.* Although FMC Devens is not currently experiencing a widespread outbreak of the virus, Belanger is residing in a dormitory environment at an institution that has been significantly affected by COVID-19 and that—as the Government observes (ECF No.

---

[3] Accordingly, I need not decide three unsettled questions of law presented by Belanger's motion for compassionate release: (1) whether defendants who receive a denial from the Bureau of Prisons may choose to satisfy the hybrid requirement by waiting thirty days or must instead exhaust their administrative rights to appeal the warden's decision, (2) whether the thirty-day lapse contemplated by § 3582(c)(1)(A) must be calculated according to the date of the defendant's initial motion or whether it may be calculated according to the date of an amended motion, or (3) relatedly, whether the thirty-day lapse must occur before the defendant may bring a motion for compassionate release or merely before the Court may decide the motion.

651 at 7)—will, in all likelihood, continue to confirm new cases. *See United States v. Rivera*, No. 3:13-cr-71-1 (VLB), U.S. Dist. LEXIS 104343, at *13 (D. Conn. June 15, 2020) (noting that "federal medical centers like FMC Devens, which house the BOP's sickest inmates, have not been spared the pandemic").

Also in support of a finding of extraordinary and compelling reasons, Belanger argues that he is at a heightened risk of severe illness or death from COVID-19 based on his age and medical conditions. Belanger is sixty-two years old. Medical records maintained by the Bureau of Prisons establish that Belanger has been diagnosed with Type 2 diabetes mellitus and hypertension. They also indicate that Belanger is 1.78 meters, or 70 inches, tall and weighs 240.0 pounds, which corresponds to a body mass index of 34.4 and therefore establishes that Belanger is obese. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 2, 2020) (defining "obesity" as a "body mass index [BMI] of 30 or above"); *Adult BMI Calculator*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Sept. 3, 2020).

The COVID-19 guidance issued by the CDC provides that people with Type 2 diabetes mellitus and obesity are at an increased risk of severe illness from COVID-19, and that people with hypertension might be at an increased risk. *Id.* It further states that the risk of severe illness increases with age and that adults over the age

of sixty are at a higher risk than adults under the age of sixty. *Coronavirus Disease 2019 (COVID-19): Older Adults*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Sept. 2, 2020). Because Belanger's age and medical conditions are COVID-19 risk factors according to the CDC, I find that Belanger is at an increased risk of severe illness from COVID-19 while incarcerated at FMC Devens.[4] Accordingly, I conclude that extraordinary and compelling reasons support granting his motion for compassionate release.

### 2. 18 U.S.C.A. § 3553(a) Sentencing Factors

Having determined that extraordinary and compelling reasons exist, I turn to whether compassionate release would be consistent with the sentencing factors set forth in 18 U.S.C.A. § 3553(a). Belanger was convicted of one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and an unspecified amount of oxycodone in violation of 21 U.S.C.A. §§ 841(a)(1), 841(b)(1)(A), 846, as well as one count of using or maintaining a drug-involved premises in violation of 21 U.S.C.A. § 856(a)(1), (b), and 18 U.S.C.A. § 2. Specifically, Belanger began a drug operation that brought drugs from Rhode Island to Maine over a twelve-year period, from 2002 to 2014. Although Belanger moved to California in 2004 and did not participate in the drug operation for several years, the organization

---

[4] Belanger's medical records also refer to coronary artery disease and mention a previous diagnosis of atherosclerotic cardiovascular disease and a history of smoking. These conditions further increase Belanger's risk of severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (identifying "serious heart conditions" and "smoking" as COVID-19 risk factors).

he had started continued to operate in Maine. He rejoined the conspiracy—which at that point was headed by his daughter—at some point after he returned to Maine in 2008, although the evidence did not establish when he resumed his criminal activities. He remained involved for a period of years until he and his co-conspirators were charged by law enforcement. During the years that he was involved in the conspiracy, Belanger played a leadership role, but, after his return from California, his role was secondary to that of his daughter.

In imposing the original sentence in this case, I applied the factors set forth in 18 U.S.C.A. § 3553(a). Those factors include the nature and circumstances of the offense, the personal history and characteristics of the defendant, the kinds of sentences available, the Sentencing Guidelines, the need to avoid unwarranted sentencing disparities, and the need to provide restitution. Further, § 3553(a) requires that the sentence reflect the seriousness of the offense that was committed, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes, and provide the defendant with needed training, medical care, and other treatment in the most effective way.

At sentencing, I focused particularly on the need for the sentence to reflect the seriousness of the offense and to provide adequate deterrence. I found that Belanger's crime was "terrible" and "outrageous" because it had the indirect effect of harming an entire community and countless individuals' lives over an extended period of time. I further found that although Belanger was fifty-nine years old and had not been convicted of any other crimes in the preceding thirty years, a "long period" of

incarceration was necessary to promote general deterrence of large-scale drug conspiracies in Maine. Based on these findings, I imposed a term of imprisonment of 132 months, to be followed by five years of supervised release. Additionally, because I found that Belanger had significant medical problems and a history of drug addiction, I recommended that he be considered for placement at FMC Devens and for enrollment in the 500-Hour Comprehensive Drug Treatment Program during his term of imprisonment.

I now revisit the § 3553(a) factors to determine whether granting compassionate release is appropriate. One factor on which I relied in setting Belanger's sentence—the severity of his crime—weighs against granting his request for release. Belanger's crime was egregious, which is reflected not the least in the fact that Congress has made it subject to a ten-year mandatory minimum sentence. *See* 21 U.S.C.A. § 841(b)(1)(A). Granting compassionate release will have the effect of shortening the sentence to a term that does not reflect the seriousness of Belanger's conduct, particularly given that he has served less than half of his sentence to date.[5]

The Government points to Belanger's disciplinary record in prison as an indication that he would pose a danger to the public if released. *See* 18 U.S.C.A. § 3553(a)(2)(C); U.S. Sentencing Guidelines Manual § 1B1.13(2). In October of 2019, Belanger was found to have violated the prison's phone monitoring regulations by participating in an impermissible three-way phone call. According to Belanger, he was on the phone with his brother, who added another family member into the call

---

[5] As of September 2, 2020, Belanger has served approximately 43% of his total sentence, after accounting for anticipated good time.

so that the three of them could discuss Belanger's wife's housing situation. Whatever the credibility of Belanger's assertion that he did not know that the three-way call violated prison regulations, Belanger's account of the incident's underlying facts is not disputed, and there is no reason to doubt that the nature of the conversation was essentially innocent. I therefore find that the infraction has minimal, if any, relevance to determining whether Belanger's release is appropriate.

Turning to the factors that weigh in favor of granting Belanger's motion, I find that the other factor on which I primarily relied in sentencing Belanger—the need to provide adequate deterrence—will not be compromised by releasing Belanger under these extraordinary circumstances. The purpose of deterrence has been achieved by Belanger's conviction and the four years he has served in federal prison, as well as the five-year period of supervision he will continue to serve if I grant his release. When I sentenced Belanger, I noted that a lengthy sentence was necessary to provide general deterrence because the public needs to understand that even a fifty-nine-year-old man operating a drug conspiracy in rural Maine can be subject to incarceration for a long period of time. Granting Belanger's motion for compassionate release because of the severe and unforeseen risks that the virus poses to him in prison does not compromise that message. Additionally, considering the need to avoid unwarranted sentencing disparities, *see* 18 U.S.C. § 3553(a)(6), the pandemic has created a disparity where none previously existed: a 132-month sentence for Belanger—given his age and medical conditions—is now considerably more severe

than a similar sentence for a younger, healthier person facing a lower risk of serious illness or death from the virus.

Section 3553(a)(2)(D) also requires that I consider the need to provide Belanger with "educational or vocational training, medical care, or other correctional treatment in the most effective manner." During his imprisonment, Belanger has completed two education courses as well as a drug treatment program, and he presents himself as committed to no longer using drugs and to actively pursuing drug abuse treatment.[6] I find that Belanger's ongoing need for treatment and education regarding his drug use and dependency can be adequately addressed as a condition of supervised release, so long as appropriate requirements are imposed.

Other factors, many of which I addressed at Belanger's original sentencing, support a determination that Belanger presents a low public safety risk if granted compassionate release. *See* 18 U.S.C.A. § 3553(a)(2)(C). First, neither this crime nor anything in Belanger's criminal history has involved violence or firearms. Second, although this is not Belanger's first criminal offense, his prior crimes were committed more than three decades ago, and he had no criminal history points under the sentencing guidelines. Third, and relatedly, Belanger's age and health problems make him less likely to reoffend. *See* United States Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 3 (December 2017), https://ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders. Finally, the fact that Belanger will remain under federal supervision

---

[6] Belanger is currently on the waiting list for a drug education class, and he has not yet enrolled in a residential drug abuse treatment program because of the time remaining on his sentence.

subject to stringent conditions provides further assurance that Belanger's release would not present an unreasonable risk of danger to the community, especially in light of his success on pretrial release for more than a year prior to his trial. Together, these considerations support the conclusion that Belanger presents a low public safety risk if granted compassionate release while being subject to a five-year period of supervised release with stringent conditions.[7]

After considering all the § 3553(a) factors, I conclude that compassionate release is warranted under § 3582(c)(1)(A)(i).

### 3. Plan for Release

Although I find that Belanger has met the requirements for compassionate release, an appropriate supervision plan must be developed and approved. The parties are directed to expeditiously determine, in consultation with the United States Probation Office, whether an agreed-to release plan can be achieved. The United States Probation Office is directed to file a report to the Court regarding the status of these efforts within twenty days.

---

[7] For this reason, Belanger's case is unlike that in *Calhoun*, 2020 U.S. Dist. LEXIS 117527. Although I found that Calhoun, like Belanger, had demonstrated "extraordinary and compelling circumstances," I denied her motion for compassionate release because her offense involved "callous indifference" to the well-being of a child and I determined that she would remain a danger to the community if released. *Id.* at *11-16. That finding was supported by Calhoun's substantial and recent criminal history prior to her current offense, as well as her several disciplinary infractions while in prison, including one for assault. *Id.* Belanger, by contrast, had zero criminal history points under the sentencing guidelines, and his sole disciplinary infraction in prison was both nonviolent and, as I have described above, minimally relevant to determining whether he can conform his conduct to societal expectations upon release.

### III.  CONCLUSION

For the reasons explained above, Belanger's Amended Motion for Compassionate Release (ECF No. 650) is **GRANTED**, subject to the development of a release plan approved by the Court.

**SO ORDERED.**

Dated:  September 4, 2020

__/s/ JON D. LEVY__
**CHIEF U.S. DISTRICT JUDGE**
